# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>1617 JFK Boulevard, Suite 520<br>Philadelphia, PA 19103,<br><br>      Plaintiff,<br><br>      v.<br><br>ROMERO CABRAL DA COSTA NETO,<br>1750 P. Street NW, Apt. 601<br>Washington, DC 20036,<br><br>      Defendant. | Civil Action No. 23-cv-2451 |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendant Romero Cabral da Costa Neto, a/k/a "Romero Costa" or "Romero Neto" ("Costa"), and alleges as follows:

### SUMMARY

1. This action alleges insider trading by Costa based on material nonpublic information he obtained while employed at an international law firm with an office in Washington, D.C. (the "Law Firm"). Costa was employed by the Law Firm beginning on September 6, 2022, for a period of approximately one-year as a visiting international attorney from Brazil.

2. Beginning in or around May 2023, on multiple occasions, Costa abused his position at the Law Firm by accessing and viewing material nonpublic information on the Law Firm's document management system relating to impending transactions involving a Law Firm

client.  Costa then traded on the basis of the material nonpublic information he learned, generating over $42,000 in illicit profits.

3. Specifically, in or around March 2023, two biopharmaceutical companies—CTI BioPharma Corp. ("CTI") and Swedish Orphan Biovitrum AB ("Sobi")—began nonpublic discussions regarding a potential merger.  The Law Firm represented CTI in those discussions.  Negotiations over the transaction occurred over the next few months, culminating in the two companies signing a merger agreement on May 10, 2023, through which Sobi agreed to acquire CTI.  The acquisition was publicly announced that day, causing the price of CTI's stock to increase by more than 80 percent.

4. The day before the public announcement, on May 9, 2023, Costa purchased 10,400 shares of CTI.  The day of the announcement, following the news of the acquisition, Costa sold his CTI shares and realized profits of over $42,000.  While working at the Law Firm, Costa repeatedly accessed documents on the Law Firm's internal document management system containing material nonpublic information regarding the acquisition prior to the public announcement and before his CTI trades.  Costa's conduct breached a duty to the Law Firm and its client, and violated the Law Firm's policies, including its policy against insider trading.

5. Costa also traded in the securities of several other Law Firm clients close in time to material announcements relating to those entities.

6. By engaging in the conduct described in this Complaint, Costa violated, and unless enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d)–(e), 78u-1] seeking a final judgment that permanently

enjoins Costa from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint and orders disgorgement, prejudgment interest, civil monetary penalties, and such other and further relief the Court may deem just and appropriate.

8. The Court has jurisdiction pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78(u)(e), 78u-1, and 78aa].

9. Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10. Venue is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts, practices, and courses of business constituting the alleged violations occurred within the District of Columbia.  During the time period of the wrongful conduct alleged herein, Costa worked for the Law Firm in the District.

## DEFENDANT

11. Costa, age 33, is a citizen of Brazil and present in the United States pursuant to a temporary work visa.  During the relevant time period, Costa resided in Washington, D.C. and was employed by the Washington, D.C. office of the Law Firm under a one-year contract that began on or about September 6, 2022.

## RELEVANT ENTITIES

12. The Law Firm is an international law firm with 20 offices around the world, including in Washington, D.C.

13. CTI was a company involved in the acquisition, development and commercialization of therapies for blood-related cancers.  CTI was incorporated in Delaware, with its principal place of business in Seattle, Washington.  CTI's common stock was traded on

the NASDAQ under the ticker "CTIC."  CTI was acquired by Sobi on or about June 26, 2023, and is now a wholly owned subsidiary of Sobi.

14. Sobi is an international biopharmaceutical company headquartered in Stockholm, Sweden.  Sobi's common stock trades on the NASDAQ Stockholm under the ticker "SOBI."  As noted, Sobi acquired CTI on or about June 26, 2023.

## FACTS

### A. Costa's Employment with the Law Firm

15. Costa began working for the Law Firm on or about September 6, 2022.  As a non-U.S. Citizen, Costa was hired as a "Visiting Attorney" from Brazil, and the Law Firm sponsored his temporary work visa, allowing him to reside and work in the United States during the time period of his employment.  Costa's term of employment with the Law Firm was for approximately one year.

16. Upon beginning employment with the Law Firm, Costa was subject to the Law Firm's policy prohibiting insider trading by firm personnel (the "Insider Trading Policy"), and its confidentiality policy.

17. The Insider Trading Policy required all firm personnel to "maintain the confidence of all confidential information relating to or obtained from a [Law Firm] client or Firm representation" and prohibited employees "from discussing client confidential matters with persons outside the [Law Firm] (including family members) and from using confidential information for their own personal purposes or benefit."  Importantly, the Insider Trading Policy required all Law Firm employees to "refrain from the purchase and sale of the securities of any issuer at a time when they are aware of any material nonpublic information about the securities of the issuer" and expressly defined material nonpublic information to include, among other things, information about "a proposed tender offer, exchange offer, merger or acquisition."

18. In addition to the Insider Trading Policy, the Law Firm's separate, albeit related, confidentiality policy required employees to safeguard confidential information relating to firm clients and to not use that information for personal purposes or gain.

19. Costa signed and acknowledged that he received, read, understood and agreed to comply with the Law Firm's Insider Trading Policy and the confidentiality policy, as well as other firm policies.

20. Shortly after Costa began his employment with the Law Firm, on or about September 22, 2022, Costa opened a brokerage account with a U.S.-based brokerage firm ("Brokerage Firm A").

21. On or about October 21, 2022, Costa opened a separate brokerage account with another U.S.-based brokerage firm ("Brokerage Firm B").

**B. Costa Learns That CTI Was Exploring A Strategic Transaction With Sobi**

22. In or around early April 2023, CTI began exploring a strategic transaction with Sobi, and Sobi made a non-binding proposal to acquire all of CTI's fully diluted common stock. The Law Firm was one of CTI's outside legal advisers during these negotiations, which remained confidential.

23. On May 8 and 9, 2023, Costa accessed the Law Firm's document management system and obtained material nonpublic information about CTI's impending merger with Sobi. Specifically, Costa accessed and viewed draft SEC filings, board minutes, and other documents relating to the transaction. The Law Firm's access logs show that Costa viewed as many as twenty-five unique documents relating to the CTI/Sobi transaction over 100 times in the week leading up to the public announcement.

24. Costa had no apparent business purpose to access the documents relating to the CTI/Sobi transaction.

25. On May 9, 2023, Sobi and CTI agreed to the final terms of the acquisition, including pricing details; the following day—May 10, 2023—they signed a merger agreement and publicly announced the acquisition. CTI's stock price increased following the news.

26. Sobi completed its acquisition of CTI on or about June 26, 2023.

### C. Costa's Trades in CTI Stock

27. On May 9, 2023, the day before Sobi's acquisition of CTI was announced publicly and while in possession of material nonpublic information that Costa misappropriated from the Law Firm about the impending merger, Costa purchased 10,400 shares of CTI through his brokerage accounts with Brokerage Firms A and B. Upon information and belief, Costa had not previously invested in CTI or Sobi.

28. After the public announcement of the acquisition the following day, CTI's stock price rose over 80 percent from $4.82 at market close on May 9, 2023, to $8.93 at market close on May 10, 2023. Costa sold all of his shares the day of the announcement, realizing over $42,000 in illicit profits.

### D. Costa Accesses and Trades on Nonpublic Information Acquired from the Law Firm Relating to Other Law Firm Clients

29. In addition, Costa accessed other material nonpublic information from the Law Firm's document management system concerning other companies, including Law Firm clients, for which he had no apparent business purpose.

30. Costa engaged in trading activity in advance of public announcements relating to those companies.

### E. Costa Violated the Federal Securities Laws

31. At all relevant times, Costa owed a duty to not use the confidential information of the Law Firm and its clients for his own benefit, including by trading on the basis of such information.

32. The information about the CTI/Sobi merger transaction described above was confidential and nonpublic. The Law Firm established policies and procedures designed to protect such information and to prohibit its employees from trading on such information.

33. The information about the CTI/Sobi merger transaction was material. A reasonable investor would have viewed information relating to the merger and acquisition transaction as being important to his or her investment decisions and/or significantly altering the total mix of information available to the public.

34. Costa knew, or was reckless in not knowing, that the information he obtained about the CTI/Sobi transaction was material nonpublic information.

35. Costa knew, or was reckless in not knowing, that he had a duty not to trade on the basis of the material nonpublic information about the CTI/Sobi transaction that he learned during his employment.

36. In breach of his duty, Costa traded on the basis of material nonpublic information about the CTI/Sobi transaction that he learned during his employment.

37. Costa, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this Complaint.

## CLAIM FOR RELIEF

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

38. The Commission re-alleges and incorporates by reference the allegations in the preceding paragraphs, as if fully set forth herein.

39. By engaging in the conduct described above, Costa, directly or indirectly, in connection with the purchase or sale of securities, and by use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, has, knowingly or recklessly:

    a. employed a device, scheme, or artifice to defraud;

    b. made an untrue statement of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

    c. engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

40. By reason of the foregoing, Costa has violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Costa from directly or indirectly engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Costa to disgorge his ill-gotten gains and pay prejudgment interest thereon;

**III.**

Ordering Costa to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**IV.**

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws.

Dated:    August 23, 2023                Respectfully submitted,

/s/ Gregory R. Bockin
Nicholas P. Grippo
Scott A. Thompson (DC Bar No. 476604)
Gregory R. Bockin (DC Bar No. 450885)
Kara F. Sweet
SECURITIES AND EXCHANGE COMMISSION
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
(215) 597-3100
(215) 597-2740 (fax)
GrippoNi@sec.gov
ThompsonS@sec.gov
BockinG@sec.gov
SweetK@sec.gov